PATRICK DUGGAN, Respondent, *v.* HOWARD PHELPS, Appellant.

*Negligence — injury to one loading a vessel, from a thwart ship beam becoming dislodged and falling upon him — a rigger, who had prepared the vessel for loading, held not to be a fellow-servant of one loading it — waiver of the objection to a physician's testimony.*

In an action brought to recover damages for personal injuries sustained by the plaintiff, it appeared that on the morning of the day of the accident the defendant, a master stevedore, employed the plaintiff to assist in the docking of his ship; that after the docking was completed the plaintiff was laid off; that riggers in the employ of the defendant prepared the ship to receive a cargo, and, in the course of such work, removed some of the thwart ship beams from the hold of the vessel. The sole purpose of the thwart ship beams was to strengthen the vessel, and it was customary, in the course of preparing the vessel to receive cargoes, to remove all or some of them.

After the riggers had completed the work the plaintiff was again employed by the defendant to work in the hold of the vessel stowing the cargo. While performing this work one of the thwart ship beams, which had not been removed by the riggers, was dislodged by the play of a rope used in conveying the cargo to the hold, and fell upon the plaintiff, injuring him. The evidence tended to show that the riggers had neglected to secure the beam properly and that, if it had been secured properly, the play of the rope would not have dislodged it.

*Held*, that a judgment entered upon a verdict in favor of the plaintiff should be affirmed;

That the riggers and the plaintiff were not fellow-servants;

That, if the defendant decided not to remove the beam which fell, and if he foresaw or, in the exercise of due care, should have foreseen that the play of the rope might dislodge the beam, he was bound, in the exercise of his duty to provide the plaintiff with a reasonably safe place within which to perform his work, to use ordinary care to secure the beam.

Upon the trial the plaintiff testified that after the accident he was taken in an ambulance to an hospital; that he left there the next day and was thereafter treated at home by his physician, Dr. Mackey. Dr. Mackey was called by the plaintiff and testified, in detail, as to the plaintiff's injuries and his treatment. The defendant then called a physician named Chamberlain, who testified that he was the ambulance surgeon who had charge of the plaintiff and who treated him in the hospital, and asked him the following question: " Q. Now I ask you to state what condition Mr. Duggan was in at the time that you first saw him, that you treated him?"

*Held*, that the court properly sustained the plaintiff's objection to this question;

That, as Dr. Mackey and Dr. Chamberlain had treated the plaintiff at different periods, the plaintiff, by calling Dr. Mackey, did not waive his right to object to the evidence of Dr. Chamberlain.

APPEAL by the defendant, Howard Phelps, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 16th day of June, 1902, upon the verdict of a jury for $400, and also from an order entered in said clerk's office on the 12th day of June, 1902, denying the defendant's motion for a new trial made upon the minutes.

*L. Sidney Carrère* [*Edward P. Mowton* and *Henry Bogert Clark* with him on the brief], for the appellant.

*George W. Bristol*, for the respondent.

JENKS, J. :

The action is by a servant against a master for negligence. The plaintiff, a longshoreman, hired by the defendant, who is a stevedore, was at work in the hold of a steamship stowing freight. His complaint is that he was struck on the head and injured by the fall of a heavy iron beam. This beam is known as a thwart ship beam. It runs crosswise of the hatchway and is removable. The rope conveying a load to the hold disturbed the beam so that it fell. The negligence charged is failure to secure the beam in its place.

It must be borne in mind that this beam was not an appliance of the work being done by the plaintiff. Its sole purpose was to strengthen the ship or to support the hatch. Its fellow-beams had been removed by the riggers, and it could have been removed without interfering with the work upon which the plaintiff was engaged. Presumably it was left there upon the ground that removal was not necessary, and the evidence is that in preparing a

hatchway for the storage of cargo in the hold it was not always the custom to remove all of the crossbeams. The place of work was the hold of the ship in relation to the open hatch above, through which the cargo was brought down into the ship. The beam was left across the open hatch by the servants of the defendant, who prepared the hatch to receive the cargo. If the defendant decided not to remove the beam, and if he foresaw, or, in the exercise of due care, should have foreseen that the rope in its play might come into contact with the beam so as to disturb it and so cast it down into the hold, then in the course of his duty to prepare a place for work reasonably safe, he was bound to use ordinary care to secure the beam.

There is evidence sufficient to warrant a finding of the jury that due care was not observed in securing this beam, and that, if it had been secured in the usual manner, the play of the rope would not have disturbed it. It is evident that any neglect to secure the beam properly was that of the riggers employed and directed by the defendant. It is insisted that the relation of fellow-servants between them and the plaintiff bars recovery. It appears that the accident happened at five o'clock in the afternoon. The plaintiff testified that he had been working early in the morning of that day in docking the steamship; that he was then laid off in order that the riggers might prepare the ship, and that after this was done he went to work loading the cargo, having been hired anew for that purpose. In fine, a longshoreman was hired for a certain work, did the work and was discharged. Thereafter the servants of his former master prepared the ship for loading. Thereupon the plaintiff was hired again for a different work, and began his second employment after the place of work had been prepared for him. I think that under such circumstances the plaintiff and the riggers, though employed by a common master, were not engaged in a common service, for, when the plaintiff entered upon his second employment, it was after the work of preparing a suitable place for his work had been completed. (*Kranz* v. *Long Island R. Co.,* 123 N. Y. 1; *Schmit* v. *Gillen,* 41 App. Div. 302; *Eastland* v. *Clarke,* 165 N. Y. 420.)

It is insisted that the court erred in excluding the testimony of Dr. Chamberlain. The plaintiff testified that after the accident he

was taken in an ambulance to a hospital; that he left there the next day, and was thereafter treated at home by his physician, Dr. Mackey, who testified in detail as to the injuries and the treatment. The defendant called Dr. Chamberlain, who testified that he was the ambulance surgeon who had charge of the plaintiff; that he treated him in the hospital, and that he could state what he did and what was the condition of the patient. He was asked: "Q. Now I ask you to state what condition Mr. Duggan was in at the time that you first saw him, that you treated him?" It was objected that the question was incompetent and immaterial, and that this was the physician who attended the plaintiff, who is not allowed to disclose matters discussed while treating him professionally, and the objection was sustained. The learned counsel for the appellant argues with much ability and ingenuity that when the plaintiff called his own physician he waived his privilege, and that the policy of the law should not permit the plaintiff to close the mouth of Dr. Chamberlain. But the statute as interpreted is against him. It is held that what is seen by a physician in looking at the patient is within the privilege (*Grattan* v. *Metropolitan Life Ins. Co.*, 92 N. Y. 274); that it is not necessary that the physician should be employed by the patient, or that there should be a contract relation between them (*Renihan* v. *Dennin*, 103 N. Y. 573); that the plaintiff by calling his physician to testify as to his disease and its treatment does not waive his objection to the evidence of other physicians who had treated him at other periods (*Hope* v. *Troy & Lansingburgh R. R. Co.*, 40 Hun, 438; affd., 110 N. Y. 643); and that, although a patient gives evidence as to his condition both before his entrance to a hospital, and after he leaves it, he does not waive the privilege as to a physican who treated him in that interim. (*Barker* v. *Cunard Steamship Co.*, 91 Hun, 495; affd., 157 N. Y. 693.) Dr. Mackey and Dr. Chamberlain could only speak as to different periods. If the waiver as to Dr. Mackey elicited evidence in reference to the same period as that when Dr. Chamberlain was in attendance, then a different question would be presented. The discrimination between the case at bar and the cases of *Griffiths* v. *Met. St. Ry. Co.* (171 N. Y. 106) and *Green* v. *Met. St. Ry. Co.* (Id. 201) is that in this case Dr. Chamberlain had testified that he was the ambulance surgeon who had charge of Mr. Duggan; that he

recalled what he did for him; that he treated him after he came to the hospital, and he was asked to state his condition "at the time that you first saw him, that you treated him." He was, therefore, asked to speak in the relation of physician to patient. The objection to the admission of his testimony was properly sustained.

The judgment and order should be affirmed, with costs.

Present — GOODRICH, P. J., BARTLETT, WOODWARD, HIRSCHBERG and JENKS, JJ.

Judgment and order unanimously affirmed, with costs.